# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

|  |  |
|---|---|
| MELODY L. WILLIAMS, | :    Case No. 3:16-cv-00384 |
|        Plaintiff, | :<br>:    District Judge Thomas M. Rose |
| vs. | :    Magistrate Judge Sharon L. Ovington<br>: |
| OHIO DEPT. OF REHAB. AND<br>CORRECTIONS, et al., | :<br>:<br>: |
|        Defendants. | :<br>: |

## REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Melody L. Williams was, for a time, an inmate at the Dayton Correctional

Institution.  She is presently incarcerated (since mid-September 2016) in the Ohio

Reformatory for Women.  Her original Complaint advanced many theories of liability under

42 U.S.C. § 1983, most of which were previously dismissed.  Plaintiff's enduring claims

focus on her allegations that the dental and medical care she did and did not receive while

an inmate at the Dayton Correctional Institution (DCI) and the Ohio Reformatory for

Women violated her rights under the Constitution.  She lodges her claims under the Eighth

Amendment's prohibition against cruel and unusual punishment.

Her remaining claims fall upon Defendants Ohio Department of Rehabilitation and

Correction/Gary Moore; DCI Warden Wanza Jackson-Mitchell; DCI physicians Dr. Moore-

Dulan and Dr. Dulan; DCI health care administrator Ms. Jenkins-Harris; and four or five

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

dentists (names unknown) at DCI.  (Doc. #37, *PageID* #919).

The case is presently pending upon Defendants' Motion for Summary Judgment

(Doc. #33), Plaintiff's Amended Complaint (Doc. #37), Plaintiff's Objection to Magistrate

Judge Order (Doc. #38), Plaintiff's Motion to Compel (Doc. #39), and the record as a

whole.  Although Plaintiff's Amended Complaint was docketed after Defendants filed their

Motion for Summary Judgment, Defendants received a copy of the Amended Complaint

from Plaintiff well before it was docketed.  *See* Doc. #25, *PageID* #746.  Defendants

address Plaintiff's Amended Complaint in their pending Motion for Summary Judgment.

Defendants seek summary judgment on all Plaintiff's remaining claims.

## II.    Summary Judgment

A party is entitled to summary judgment when there is no genuine dispute over any

material fact and when the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Barker v.

Goodrich,* 649 F.3d 428, 432 (6th Cir. 2011).  "A fact is material if it would establish or

refute an 'essential element[ ] of a cause of action or defense asserted by the parties[.]'"

*Estate of Romain v. City of Grosse Pointe Farms*, __F.3d__, 2019 WL 3808877, at *3 (6th

Cir. 2019) (citation omitted); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

A factual dispute is *genuine* where "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248 (1986); *see Estate of

Romain*, __F.3d__, 2019 WL 3808877, at *3 (citation omitted).

To resolve whether a genuine issue of material fact exists, the Court draws all

reasonable inferences in the light most favorable to the non-moving party.  *Richland*

*Bookmart, Inc. v. Knox County, Tenn.,* 555 F.3d 512, 520 (6th Cir. 2009) (citing *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986)).  With these

reasonable inferences in the forefront, "[t]he central issue is 'whether the evidence presents

a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.'"  *Jones v. Potter,* 488 F.3d 397, 402-03 (6th Cir.

2007) (quoting, in part, *Anderson,* 477 U.S. at 251-52).

**III.    Plaintiff's Allegations**

Plaintiff's Amended Complaint alleges the following.  For three years at DCI, Dr.

Moore, Dr. Dulan, and Ms. Jenkins allowed her to suffer from her serious medical problems

and ignored her serious medical needs, including treatment for H. pylori.[2]  On August 2,

2016, she was in the Captain's Office at DCI when she "felt the overall area of her naval

ball up into a knot and explode."  (Doc. #37, *PageID* #920).  She was rushed to the

infirmary where she could not stand, walk, or move without experiencing violent pain

waves through her spine.  Dr. Dulan briefly examined her but did not examine her abdomen

or spine.  Dr. Dulan ignored her requests for immediate emergency medical attention.  She

was instead given Mylanta and forced to return to her Housing Unit.  She had "severe pain

all night, and the following day, [her] right leg and foot had a sensitivity to touch, a hot

burning tingling sensation, and the toe on her right foot would lock and stick together."  *Id.*

at 921.  Plaintiff's "back felt as if it had been burned from the inside out and there was

burning and tenderness above her naval (abdomen)."  *Id.*  Plaintiff asserts that the repeated

---

[2] H-pylori is a type of bacteria that causes stomach infection and can lead to peptic ulcer disease or other problems.  The Merck Manual, pp. 247-56 (17th ed. 1999).

denial of medical care for H. pylori caused her to develop ulcers "one of which did perforate and cause severe injury and trauma to [her] spine and abdomen." *Id*. at 921.

Plaintiff also recounts that she was repeatedly denied prompt and adequate medical care for chronic obstructive pulmonary disease. This occurred even after Drs. Dulan and Moore were informed that Plaintiff had a thirty-year history of smoking a pack of cigarettes a day. She has restricted breathing and a severe cough for which she was repeatedly denied adequate medical testing, diagnosis, and treatment. These health problems prevented her from lying down, sleeping, running, walking, and working. These health problems also cause her to vomit and lose control of her bladder.

As to her dental problems, Plaintiff understands that the Ohio Department of Rehabilitation and Correction (ODRC) and DCI have a policy that requires inmates to wait one year from when they are first incarcerated to receive dental care, except for tooth retractions. She maintains that she was denied dental care for over one year for her existing dental problems, and she was denied preventative dental care for over one year, starting from her incarceration at DCI. She explains:

> Plaintiff did enter the ODRC prison system with considerable dental issues, the first being dental issues that had been started, but not completed, due to [her] sudden incarceration, such as capping of her two front feet after four root canals. Because of incomplete dental procedures, [she] had two open and exposed teeth in the very front of her mouth, as well as a post that needed to be removed from a prior root canal that constantly raised up through the gums creating severe pain, bleeding and tenderness.

*Id*. at 922-23. Plaintiff was also missing most of her back teeth on both sides of her mouth from, as she sees it, "erosion from mercury fillings as a child, and due to a history of heavy smoking. As a result, [her] teeth were in desperate need of repair upon incarceration." *Id*.

4

at 923. She also had several cavities that needed to be filled. She notes that she has a history of severe gum disease and grinds her teeth at night.

A dentist at DCI told Plaintiff that "it was not the policy of ODRC or DCI to perform root canals or to cap or crown teeth, and her two front teeth could not be saved or repaired and would need to be retracted. Plaintiff did refuse to have the teeth extracted on all occasions hoping to save the teeth." *Id.*

In September 2016, Plaintiff was transferred to the Ohio Reformatory for Women. When she arrived there, she was very sick. A nurse practitioner diagnosed Plaintiff with H. pylori "that Dr. Moore alleged to have eradicated." *Id.* at 924. She still experienced chronic stomach pains and felt "as though she had H-pylori. The gnawing, burning, acidity sensation continued in her stomach and [she] was unable to sleep and always felt like she was starving." *Id.* at 925.

To treat her Chronic Obstructive Pulmonary Disease, she was given two inhalers (Symbicort and Albuterol) and placed on a breathing treatment three times a day. She was denied testing, like an MRI, an endoscopy, and x-rays, to determine the extent of her abdominal and spinal injuries. She was not provided with a treatment plan to rid her of constant pain. *Id.* at 924.

Defendants find much missing from Plaintiff's recounting of her medical problems. They assert that Defendants have attempted to provide her with medical treatment including a blood test by Dr. Dulan; over-the-counter medications recommended by Defendant Moore; a "cocktail of Amoxicillin, Biazin, and Prilosec for 14 days"; a steroid shot; a sixty-day regimen of Prilosec; Mylanta; upper-gastrointestinal tests; a steroid shot and C-Pac for

5

respiratory infections; an inhaler; a five-day steroid regimen for allergies; and a Barium

contrast x-ray.  (Doc. #33, *PageID* #783 (quoting, in part, Doc. #3, *PageID* #358 and citing

*PageID* #s 357-63)).

## IV.    Procedural Background

In response to Defendants' Motion for Summary Judgment, Plaintiff sought a sixty-

day extension of the date her response was due.  She reported that she needed additional

discovery materials—namely, copies of some of her medical records.  This was problematic

because the discovery phase of the case ended on April 1, 2019.  Yet Plaintiff explained that

she had been unable to complete discovery due to issues with Defendants' counsel and

because she had become sick during the discovery period and lacked access to a copy

machine.  (Doc. #35).

Given the potentially dispositive nature of Defendants' exhaustion arguments, the

undersigned Judicial Officer directed Plaintiff to respond to Defendants' exhaustion

arguments and provided her additional time to do so.

Plaintiff next filed an Amended Complaint focusing on her Eighth Amendment

medical and dental claims (Doc. #37) and soon filed Objections to the Order directing her to

respond to Defendants' exhaustion arguments (Doc. #38).  She argues in her Objections that

her claims are fully exhausted, she discussed how she exhausted them, and she cites

documents in the record of this case.  Lastly, Plaintiff's Eighth Amendment medical and

dental claims are not addressed herein because she has a pending discovery motion

concerning her medical records.  The other matters raised in Defendants' Motion for

Summary Judgment are ripe.

**V.     Discussion**

To succeed in proving a cause of action under § 1983, a plaintiff must establish that a person acting under color of state law violated his or her rights under the Constitution or laws of the United States.  *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018).

**A.     Exhaustion**

Defendants contend that summary judgment is warranted in their favor on Plaintiff's remaining § 1983 claims because she failed to administratively exhaust them before pursuing them in this Court.

An inmate seeking to challenge the "conditions of his confinement under section 1983…," must exhaust "such administrative remedies as are available [to him]."  42 U.S.C. § 1997e(a).  This statutory command is mandatory.  *See Ross v. Blake*, __U.S.__, __136 S.Ct. 1850, 1856 (2016) ("An inmate 'shall' bring 'no action'…, absent exhaustion of available administrative remedies."); *see Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).  "A court may not excuse a failure to exhaust …."  *Ross*, 136 S.Ct. at 1856.  Because Congress has made the exhaustion requirement mandatory, a court may not consider whether its imposition in a given case is just or unjust.  *Id*. at 1858.  Indeed, the applicable statute, 28 U.SC. § 1997e(a), "foreclose[s] judicial discretion."  *Id*. at 1857.

Exhaustion is an affirmative defense.  *Napier v. Laurel County, Ky*., 636 F.3d 218, 225 (6th Cir. 2011).  Defendants therefore shoulder the burden of establishing that Plaintiff has not exhausted her administrative remedies.  *See id*.

In Ohio, administrative remedies are potentially available to inmates through a three-step grievance procedure.  *See* Ohio Admin. Code §§ 5120-9-31(A), (K).  This procedure

allows inmates to seek administrative relief for grievances concerning "any aspect of institutional life that directly and personally affects the grievant. This may include complaints regarding policies, procedures, conditions of confinement, or the actions of institutional staff." *Id*. at § 5120-9-31(A). Boiled down to its core, Ohio's grievance procedure begins with filing an informal complaint, followed by a notification of grievance, and ends with an appeal. *Id*. at §§ 5120-9-31(J)(1)-(3); *see Marshall v. Ohio Dep't of Rehab. & Corrections*, No. 17-3569, 2018 WL 2539418, at *2 (6th Cir. 2018).

The informal complaint must be submitted to the "direct supervisor of the staff member, or department most responsible for the particular subject matter of the complaint…." Ohio Admin. Code § 5120-9-31(J)(1). "If the inmate is dissatisfied with the informal complete response…, the inmate may file a notification of grievance with the inspector of institutional services…." *Id*. at § 5120-9-31(J)(2). If dissatisfied, "the inmate may file an appeal with the inspector of institutional services. The appeal must then be filed to the office of the chief inspector …. The decision of the chief inspector or designee is final. Grievance appeals concerning medical diagnosis or a specific course of treatment shall be investigated and responded to by a health care professional." *Id*. at § 5120-9-31(J)(3).

Defendants contend that Plaintiff has not exhausted her Eighth Amendment medical and dental claims. They present a strong case. They rely on the declaration of Oscar Young who is an ODRC employee. He is the custodian of ODRC's grievance records, and he bases his affidavit on his personal knowledge. As to Plaintiff's involvement in the grievance procedure, Young explains:

Plaintiff Melody Williams … submitted a total of fifty (50) informal complaints in 2016.

Plaintiff augmented fourteen of these informal complaints to grievances. Of those fourteen (14), only five (5) were granted in her favor.

Of the five grievances that were granted, one was for library materials, one was for vermin, one was for educational programming, and two are listed as other. Neither of the two grievances that are listed as "Other" related to medical or dental care.

Plaintiff submitted fourteen (14) informal complaints that related to medical and/or dental care in 2016. Of the fourteen, she only augmented four (4) of them to a grievance. In each of those four instances, her grievance was denied by the institutional inspector.

Plaintiff did not appeal any of these denials to the Chief Inspector's Office ….

(Doc. #33, *PageID* #s 893-94 (citations and numbering omitted)).

Young cites to records attached to his affidavit that list Plaintiff's informal complaints and grievances. He backs up Defendants' contention that Plaintiff did not appeal any of the denials of her four grievances to the Chief-Inspector level—a failure to fully exhaust her claims. *See* Ohio Admin. Code §§ 5120-9-31(J)(1)-(3); *see also Marshall*, No. 17-3569, 2018 WL 2539418, at *2.

For her part, Plaintiff points to copies of grievances and other documents attached to her original Complaint. She first relies on a notice-of-grievance form she submitted in September 2015. (Doc. #38, *PageID* #931 (citing *PageID* #472)). The problem with this grievance is that rather than describing her medical problems in any significant detail, she focuses on Dr. Moore's alleged violations of her right to privacy. (Doc #3, *PageID* #472). These violations occurred, according to Plaintiff, when Dr. Moore twice requested her medical records from separate hospitals even though she had not signed a release for her

9

records.  *Id.*  She also asserts that the "medical department uses forms that are nonspecific and as such can be repeatedly used to secure private records without explicit consent from inmate patients in violation of HIPPA …."  *Id.*  To the extent this September 2015 notice of grievance rests on violations of a right to privacy—a claim she does not raise in the present case—this grievance did not exhaust the Eighth Amendment claims she raises in the present case.

Even if Plaintiff's September 2015 notice of grievance relates to her present remaining Eighth Amendment medical claims, she runs into another pickle.  She argues that she next exhausted her September 2015 grievance claims by appealing to the Chief Inspector.  *See* Doc. #38, *PageID* #931 (citing *PageID* #s 471, 473).  However, one document she cites in support of this argument is the Appeal to the Chief Inspector that she submitted in October 2014, some eleven months before her September 2015 notice of grievance.  *Compare* Doc. #3, *PageID* #471 *with* #472.  Of course, step two precedes step three in Ohio's administrative procedure.  *See* Ohio Admin. Code §§ 5120-9-31(J)(1)-(3).  This means that Plaintiff's October 2014 appeal to the Chief Inspector—the final step in the administrative procedure—related to a grievance she filed before October 2014, not to the grievance she filed in September 2015.

For these reasons, the documents on which Plaintiff relies fail to create a genuine dispute over Young's statement that Plaintiff did not appeal the denials of her medical-related grievances to the Chief Inspector's Office.  Defendants have therefore met their burden to show that Plaintiff failed to administratively exhaust her Eighth Amendment medical claims.

Turning to Plaintiff's Eighth Amendment inadequate-dental-care claim, she properly relies on the informal complaint submitted on June 12, 2016 and the notification of grievance she submitted on June 28, 2016. (Doc. #38, *PageID* #932 (citing *PageID* #s 526-28)). In both documents, she raised allegations about the inadequate dental care she had received at DCI. She therefore satisfied steps one and two of Ohio's mandatory administrative procedure.

Plaintiff next relies on her handwritten letter dated "July 18" (presumably 2016) in which she asserts a claim of inadequate dental care over the past three years. She alleges that dentists have failed to treat obvious dental emergencies, have extracted rather than treated and repaired her teeth, and failed to prevent loss of teeth, "an irreparable serious injury." (Doc. #3, *PageID* #s 529-30). As to why she was writing the letter, she states, "The Institutional Inspector, Mr. Young to date has failed to reply, or to request additional time to reply pursuant to A.R. 5120-9-31. Accordingly, I do wish to move this grievance forward as it is unresolved." (Doc. #3, *PageID* #529). There are two problems here. First, she sent this appeal letter too soon. At step two of the required administrative process, "If a disposition [of a grievance] has not been rendered after a total of twenty eight days from the receipt of the grievance, the complaint will be deemed unresolved and the inmate may proceed to step three of the process…." Ohio Admin. Code § 5120-9-31(J)(2). Plaintiff did not wait a total of twenty-eight days from the receipt of the grievance. Even if it is assumed that the grievance was received on the date she completed it, June 28, 2016, she waited only twenty days before sending her letter to the Chief Inspector. She therefore failed to follow the time requirement set forth in § 5120-9-31(J)(2).

Her second problem is that she sent a letter to the Chief Inspector rather than

completing the appeal form, as she had previously done. *E.g*., Doc. #3, *PageID* #471. The

appeal form itself instructs the inmate to complete the form and send it (and other

documents) to the Chief Inspector. Because Plaintiff had done this before, there is no doubt

she knew this procedure. This is confirmed by the information about the inmate grievance

procedure that is attached to her Response. (Doc. #38, *PageID* #939). This document

instructed Plaintiff, in pertinent part, to do the following if she decided to appeal the

grievance decision (*i.e.*, begin step 3):

> Read the inspector's [grievance] disposition. If you are not satisfied with the
> finding or feel a mistake was made then you may appeal to the chief
> inspector…. Ask the inspector for an appeal form. Read the instructions on the
> form. Be sure to fill in all blanks, write neatly, and be brief. Explain why you
> do not agree with the inspector's decision…. Mail the appeal to the chief
> inspector. The chief inspector's address is on the form.

*Id*. By plainly telling Plaintiff to use the appeal form and instructing her how to properly

use it, this document taught her how to actualize an appeal to the Chief Inspector. This

document, along with Ohio Admin. Code § 5120-9, establishes the existence of a

straightforward and organized procedure for chronicling what occurs at step three of the

grievance procedure. Because Plaintiff's premature letter failed to follow these procedures,

she failed to exhaust her claims of inadequate dental treatment.

Plaintiff acknowledges that she did not use the appropriate forms to contact the Chief

Inspector. This seems a small problem, at first glance. It is not. Even Plaintiff sees the

larger magnitude of this problem by recognizing that "this did, or may have caused his

records not to reflect the appeals to the Chief Inspector filed by Plaintiff." (Doc. #38,

*PageID* #933). Plaintiff's premature letter, moreover, conflicts with the goals of the

exhaustion requirement: "to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected, and to create an administrative record for those disputes that eventually end up in court." *Napier*, 636 F.3d at 226 (quoting, in part, *Reed–Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

Plaintiff explains that she "was forced to contact the Chief Inspector directly and without the appropriate forms …." (Doc. #38, *PageID* #932). Construing this allegation liberally in her favor, she may be asserting that the lack of appropriate forms interfered with her ability to exhaust step three of the grievance procedure. This implicates the sole exception to the exhaustion requirement: an inmate does not need to exhaust *unavailable* remedies. *Ross*, 136 S.Ct. at 1858 (discussing § 1997e(a)). Remedies qualify as unavailable when interference occurs: "[E]xhaustion is not required when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860. Remedies are unavailable when they are illusory: "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. Similarly, remedies are unavailable where an "administrative scheme is so opaque that it becomes, practically speaking, incapable of use." *Id*. None of these situations occurred during

13

Plaintiff's grievance appeal.

Plaintiff alleges that she was forced to contact the Chief Inspector without the appropriate form because the decision denying her step-two grievance was untimely. But, as discussed above, her step-three letter to the Chief Inspector was premature: She did not wait the required length of time to proceed to step three. *See* Ohio Admin. Code § 5120.9-31(J)(2) ("If a disposition has not been rendered after a total of twenty-eight days from the receipt of the grievance, the complaint will be deemed unresolved and the inmate may proceed to step three of the process."). On July 17, 2016, she was not in the predicament of being forced to do anything until the grievance decision became overdue. Plaintiff alleges that the Inspector of Institutional Services incorrectly reported in his grievance decision on August 7, 2016 that she had filed her grievance on July 24, 2016. (Doc. #38, *PageID* #932). She further alleges that he "would repeatedly change the dates of when Plaintiff filed a grievance to line up with his response or disposition …." *Id*. The record does not bear this out. Plaintiff's grievance is dated June 28, 2016. (Doc. #3, *PageID* #528). Yet there is no indication on this form when she filed the grievance or when the Institutional Services Inspector received it. It is therefore an unreasonable inference to conclude that the Institutional Service Inspector changed any date in his grievance decision. Yes, he noted that Plaintiff's grievance was filed on July 24, 2016, but this suggests that he received it on July 24 rather than on the same date Plaintiff wrote it, June 28. *Id*. at 531-32. More significantly, this purported change of date does not change the fact that Plaintiff's letter to the Chief Inspector was premature even if she filed her grievance on June 28. And assuming he did change the filing date as Plaintiff alleges does not show she was forced to

14

send a premature letter, rather than proper form, and does not show any interference with her ability to pursue a grievance appeal under the required procedures.

Accordingly, for the above reasons, Plaintiff failed to properly exhaust her Eighth Amendment claims under the required administrative procedures.

**B.** **Eleventh Amendment Immunity**

Defendants maintain that the Eleventh Amendment extends immunity to them from Plaintiff's attempt to recover monetary damages against them in their official capacities.

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State …." U.S. Const. amend. XI . When the Eleventh Amendment applies in federal lawsuits, it bars monetary claims against a State or state officials acting in their official capacities. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (and cases cited therein). "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' i.e., against the State." *Id.* (quoting, in part, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See, e.g., Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985). Plaintiff does not contend otherwise. Her claims are therefore barred to the extent she seeks monetary damages against state officials in their official capacities. *Id.*; *see Allen v. Ohio Dept. of Job and Family Servs.*, 697 F.Supp.2d 854, 908 (S.D. Ohio 2010) (Smith, D.J.) ("The Sixth Circuit has repeatedly and consistently held that the State of Ohio has not consented to be sued for state law claims in federal

15

court.").

Accordingly, Defendants are entitled to summary judgment in their favor against claims Plaintiff raises against them in their official capacities.

## C.    <u>Respondeat Superior</u>

Defendants contend that Defendants Mohr, Pringle, Jackson-Mitchell, and Jenkins-Harris are entitled to summary judgment on Plaintiff's remaining claims because respondeat superior does not apply to claims raised under § 1983.  They are correct.

Plaintiff has not alleged how these individual defendants were personally involved in violating her Eighth Amendment right to medical or dental care.  At most she alleges that these Defendants are generally responsible for the welfare of inmates or the oversight of medical departments.  Such allegations fail to expose these individual Defendants to § 1983 liability.  *See Peatross v. City of Memphis,* 818 F.3d 233, 241 (6th Cir. 2016); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) ("Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.")

## IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. #33) be GRANTED; and

2.    The case be terminated on the Court's docket.


August 26, 2019                                 *s/Sharon L. Ovington*
                                                Sharon L. Ovington
                                                United States Magistrate Judge


16

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).